[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-11636
Non-Argument Calendar

————————————————

D.C. Docket No. 4:94-cr-00060-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEITH BERNARD AUSTIN,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————————

(December 6, 2013)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

Keith Bernard Austin appeals the district court's denial of his request for a sentence reduction under 18 U.S.C. § 3582(c)(2). According to Austin, he was entitled to relief, notwithstanding the fact that he was sentenced as a career offender in 1995, because (1) the crack cocaine guidelines under U.S.S.G. § 2D1.1, later amended by Amendment 750, factored into the district court's sentencing decision in his case and (2) the reduced statutory penalties under the Fair Sentencing Act of 2010 ("FSA") are retroactively applicable in § 3582(c)(2) proceedings, even to defendants sentenced before the FSA became effective in 2010. We affirm the district court's decision.

The district court's legal conclusions about the scope of its authority under § 3582(c)(2) are reviewed *de novo*. *United States v. Lawson*, 686 F.3d 1317, 1319 (11th Cir.), *cert. denied*, 133 S.Ct. 568 (2012). We are bound by a prior panel opinion unless it is overruled by the Supreme Court or by this Court sitting *en banc*. *Id.* A Supreme Court decision will overrule our prior opinion only if it is "clearly on point." *Id.*

Pursuant to § 3582(c)(2), the district court may reduce a defendant's prison term if the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

Commission."  18 U.S.C. § 3582(c)(2); *see also* U.S.S.G. § 1B1.10(a)(1).

Amendment 750, the amendment at issue here, effected a permanent lowering of

the base-offense levels for particular crack cocaine quantities under U.S.S.G.

§ 2D1.1.  *See* U.S.S.G. App. C, Amend. 750.  Amendment 750, however, made no

changes to § 4B1.1, the career-offender provision.  *See id.*

As we explained in *United States v. Moore*, 541 F.3d 1323, 1330 (11th Cir.

2008), "[w]here a retroactively applicable guideline amendment reduces a

defendant's base offense level, but does not alter the sentencing range upon which

his or her sentence was based, § 3582(c)(2) does not authorize a reduction in

sentence."  *See also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a § 3582(c)(2)

reduction is not authorized if the amendment "does not have the effect of lowering

the defendant's applicable guideline range").  If an amendment did not lower the

defendant's applicable guideline range "because of the operation of another

guideline or statutory provision," then a sentence reduction is not authorized.  *See*

U.S.S.G. § 1B1.10 cmt. n.1(A).  To illustrate, *Moore* held that a career offender,

whose offense level was determined under § 4B1.1, was not eligible for

§ 3582(c)(2) relief based on amendments to the crack cocaine offense levels under

§ 2D1.1: the base offense levels set forth in § 2D1.1 "played no role" in the

calculation of the defendant's guideline range.  *Moore*, 541 F.3d at 1327 (involving

Amendment 706).  A career offender's offense level is determined by § 4B1.1 --

not § 2D1.1 -- so his sentence may not be reduced based on an amendment to § 2D1.1. *See id.*; *see also* U.S.S.G. § 4B1.1(b).

The Supreme Court's decision in *Freeman v. United States*, 564 U.S. ----, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011), on which Austin heavily relies, did nothing to alter the just-described precepts, including those we set out in *Moore*. *See Lawson*, 686 F.3d at 1321. In *Freeman*, the question before the Supreme Court was whether defendants who entered into Rule 11(c)(1)(C) plea agreements were eligible for § 3582(c)(2) relief. *Freeman*, 564 U.S. at ----, 131 S.Ct. at 2690. A plurality of the Court determined that a defendant would be eligible to seek relief under § 3582(c)(2), if the district court's decision to accept the Rule 11(c)(1)(C) plea was based on the Sentencing Guidelines. *Id.* at ----, 131 S.Ct. at 2695 (plurality opinion). The plurality explained that, although Rule 11(c)(1)(C) plea agreements included binding sentencing recommendations, the district court -- before accepting such a recommendation -- was required to evaluate "the recommended sentence in light of the defendant's applicable sentencing range." *Id.* at ----, 131 S.Ct. at 2692. Accordingly, where the court accepted a Rule 11(c)(1)(C) plea, that "acceptance . . . itself [was] based on the Guidelines." *Id.*

Shortly after *Freeman* was decided, we directly considered what effect, if any, the Supreme Court's decision had on our prior ruling in *Moore*; and we concluded that there was none. *See Lawson*, 686 F.3d at 1321. Instead, in *Lawson*,

we held that *Freeman* was not "clearly on point" to the issue raised in *Moore* --
that is, the availability of § 3582(c)(2) relief for career offenders following
amendment to the drug-quantity provisions -- and therefore the *Freeman* decision
did not abrogate our precedent. *Id.* To be more specific, while *Moore* considered
a defendant who was preliminarily assigned a base-offense level under § 2D1.1 but
was actually assigned an ultimate guideline range as a career offender under
§ 4B1.1, *Freeman* instead dealt with a defendant who had entered a plea agreement
under Rule 11(c)(1)(C). *See id.* With *Freeman* thus distinguished from *Moore*, we
determined that *Moore* remained binding and unabrogated law. *Id.*

Here, the district court correctly rejected Austin's first argument for a
sentence reduction under § 3582(c)(2). Although Amendment 750 lowered the
base-offense levels for crack offenses under § 2D1.1, it left unaltered § 4B1.1, the
career-offender provision pursuant to which Austin's guideline range was actually
calculated. In *Moore*, we squarely addressed the situation presented here and
concluded that those defendants whose guideline ranges were calculated as career
offenders, like Austin, were not eligible for sentence reductions under § 3582(c)(2)
following amendments to § 2D1.1. *See Moore*, 541 F.3d at 1327. Austin's
reliance on the Supreme Court's decision in *Freeman* is misplaced. The plurality
in that case may have made sentence reductions available to certain defendants to
whom such relief was previously disallowed -- namely, those who had entered

5

Rule 11(c)(1)(C) plea agreements -- but, as *Lawson* explained, *Freeman* simply did not speak to defendants who were sentenced as career offenders. *See Freeman*, 564 U.S. at ----, 131 S.Ct. at 2690. *Moore* remains good law, and Austin's argument to the contrary is unavailing.

Austin's second argument for relief, based on the purported retroactive applicability of the FSA's reduced statutory penalties, is also legally unsupported. The FSA, which became effective on 3 August 2010, lowered the statutory mandatory minimum penalties for crack cocaine offenses under 21 U.S.C. § 841(b). *See* Fair Sentencing Act of 2010, Pub.L. No. 111–220 § 2(a), 124 Stat. 2372 (2010). The FSA also "instructed the Commission to make … conforming amendments to the Federal sentencing guidelines … to achieve consistency with other guideline provisions and applicable law." *Dorsey v. United States*, 567 U.S. ----, 132 S.Ct. 2321, 2329, 183 L.Ed.2d 250 (2012) (quotations omitted). The Commission obliged by promulgating Amendment 750, discussed above. *See* U.S.S.G. App. C, Amend. 750.

The FSA's reduced statutory penalties are applicable to those persons sentenced after the Act took effect, but not to those persons sentenced beforehand. In *Dorsey*, the Supreme Court concluded that the FSA's reduced statutory mandatory minimums apply to defendants who committed crack cocaine offenses before the Act became effective but who were initially sentenced *after* that date.

*Dorsey*, 567 U.S. at ----, 132 S.Ct. at 2326.  We later made clear that *Dorsey* did not extend to pre-FSA defendants who were sentenced *before* the Act's effective date.  *United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012).  In *Berry*, after surveying then-existing case law from sister circuits, we ultimately "agree[d] with every other circuit to address the issue that there is no evidence that Congress intended [the FSA] to apply to defendants who had been sentenced prior to the August 3, 2010 date of the Act's enactment."  *Id.*  (quotations omitted).  Furthermore, *Dorsey* itself "did not suggest that the FSA's new mandatory minimums should apply to defendants . . . who were sentenced long before the FSA's effective date."  *Id.*  Instead, "[t]he Supreme Court in *Dorsey* carefully confined its application of the FSA to pre-Act offenders who were sentenced after" that date.  *Id.* at 378.

With our prior ruling in *Berry* as backdrop, the district court correctly denied Austin's second argument for § 3582(c)(2) relief.  Austin has pointed to nothing in the text, history, or purpose of the FSA that demands its retroactive applicability to defendants who, like him, were sentenced <u>before</u> it took effect; and our prior precedent dictates the opposite result.  *See Berry*, 701 F.3d at 377.  Nor does the Supreme Court's decision in *Dorsey* aid his argument, as the Court's ruling in that case was confined to defendants who, unlike him, were or would be sentenced *after* the FSA became effective.  *See Dorsey*, 567 U.S. ----, 132 S.Ct. at 2326.  For

7

that reason, Austin's argument fails.

**AFFIRMED.**